***********
Upon review of the competent evidence of record with reference to the errors assigned and finding no good grounds to reconsider the evidence, receive further evidence (except for medical documentation provided pursuant to the Order reopening the case) or to rehear the parties or their representatives, the Full Commission affirms with minor modifications the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing, and in the executed Pre-Trial Agreement, as:
 STIPULATIONS
1. The parties are bound by and subject to the jurisdiction of the North Carolina Workers' Compensation Act.
2. At all relevant times, an employer-employee relationship existed between Employer-Defendant and Employee-Plaintiff.
3. Plaintiff has alleged two injuries, one occurring on November 15, 2000 (I.C. File No. 291426) when two boxes fell on her head, and another occurring on March 5, 2002 (I.C. File No. 287848) when she struck her left shoulder on a wall. The first claim was a medicals only claim and Plaintiff missed no time from work. The second claim was accepted as compensable under a Form 60 noting an average weekly wage of $416.74 with a corresponding compensation rate of $277.84.
4. Employee-Plaintiff took a one-month leave of absence in August 2003 and returned to work for Employer-Defendant at the same or greater average weekly wage in September 2003.
5. Employee-Plaintiff took a leave of absence from August 28, 2004 through January 3, 2005. Employee-Plaintiff returned to her job with Employer-Defendant at the same or greater wages on January 3, 2005.
6. All parties have been correctly designated, there is no question as to misjoinder of the parties, and the parties are subject to the jurisdiction of the North Carolina Industrial Commission. *Page 3 
7. Plaintiff received her initial medical treatment for her left shoulder complaints with Dr. Gualteros of Concentra Medical Centers. Plaintiff later began treatment with Dr. Noah at High Point Orthopedics and Sports Medicine in April of 2002. Plaintiff was then evaluated by Dr. Jackson of Triad Neurological Associates on May 20, 2002. Plaintiff eventually saw Dr. Curling with Winston Neurological Spine Surgery Associates and Dr. O'Brien with Orthopaedic Specialists of the Carolinas.
8. Plaintiff was released at maximum medical improvement on February 26, 2003 by Dr. Curling. She was provided a 5% rating to the back.
9. On March 29, 2004, Plaintiff underwent an independent medical evaluation with Dr. O'Brien. As a result of the examination, Plaintiff received a 0% rating.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
The following documents were accepted into evidence as Plaintiff's exhibits:
 • Exhibit 1: Medical records and bills
The following documents were accepted into evidence as Defendants' exhibits:
 • Exhibit 1: Medical records
 • Exhibit 2: Dr. Laura A. Black's responses to Defendants' written questions
 • Exhibit 3: Dr. Damien S. Scelfo's responses to Defendants' written questions
The following were also received post-hearing: *Page 4 
 • Dr. O. Del Curling's opinion letter dated April 10, 2006
 • Dr. Black's opinion letter dated January 26, 2006
Deputy Commissioner Harris received a letter from Plaintiff dated May 31, 2006, which was in the nature of a reply to Defendants' Contentions. The record in this case closed on May 25, 2006 and Plaintiff's May 31, 2006 letter was not considered by Deputy Commissioner Harris.
 *********** ISSUES
The issues for determination before the Deputy Commissioner were:
1. Whether Plaintiff has received all appropriate medical benefits in I.C. No. 291426?
2. Whether Plaintiff is entitled to further medical treatment in I.C. No. 291426, and, if so, what treatment?
3. Whether Plaintiff has received all appropriate medical and indemnity benefits in I.C. No. 287848?
4. Whether Plaintiff is entitled to further medical treatment in I.C. No. 287848, and, if so, what treatment?
 *********** ORDER
Defendants' Motion to Dismiss Plaintiff's Appeal filed November 17, 2008 is DENIED.
 ***********
Based upon all of the competent, credible evidence of record, the Full Commission makes the following: *Page 5 
 FINDINGS OF FACT
1. During the period including 2000 and 2002 and following, Plaintiff was employed with Defendant-Employer in a retail sales position as a cosmetics consultant. In her position, Plaintiff had a variety of duties, including stocking inventory.
2. On November 15, 2000, two boxes of inventory weighing approximately 40 pounds apiece fell from a shelf and landed on Plaintiff's head. Plaintiff filed a workers' compensation claim for this incident, in which she alleged, via a Form 18 dated July 10, 2002, that she sustained injuries to her head and neck in the incident. This claim was assigned I.C. No. 291426.
3. Defendants handled I.C. No. 291426 as a "medicals-only" claim because Plaintiff did not miss any work time as a result of the November 15, 2000 incident, and her medical treatment immediately following the incident was, apparently, minimal.
4. Following the November 15, 2000 incident, Plaintiff treated with Concentra Medical Centers in Winston-Salem, North Carolina, where she was diagnosed with a cervical strain.
5. On March 5, 2002, Plaintiff jammed her left shoulder into a doorframe as she was passing through a door at work. Plaintiff filed a workers' compensation claim for this incident, in which she alleged, via a Form 18 dated July 10, 2002, that she sustained injuries to her left shoulder, neck and back in the incident and that she had suffered from continuous migraine headaches since the incident. This claim was assigned I.C. No. 287848. 6. Defendants accepted I.C. No. 287848 as compensable via a Form 60 dated July 6, 2004. On the Form 60, Defendants described the injuries as being to Plaintiff's "upper back/neck area, left shoulder and lower back." *Page 6 
7. Following the March 5, 2002 incident, Plaintiff initially treated with Concentra, where she was diagnosed with a left shoulder contusion and left cervical and thoracic strains. Defendants directed Plaintiff to Concentra.
8. Plaintiff then treated with Dr. H. Bryan Noah, an orthopedist, from April 15, 2002 through August 16, 2002. Defendants directed Plaintiff to Dr. Noah. Dr. Noah's impression was that Plaintiff suffered from a left shoulder contusion, cervical sprain and headaches.
9. On May 20, 2002, Plaintiff had a one-time consultation with Dr. Travis H. Jackson, a neurologist, based upon a referral by Dr. Noah. Dr. Jackson found no evidence of any neurological injury and opined that Plaintiff's headaches were part of a myofascial pain syndrome.
10. Following Plaintiff's treatment with Dr. Noah, Defendants sent her to Dr. O. Del Curling, an orthopedist. Plaintiff consulted with Dr. Curling four times between October 1, 2002 and February 26, 2003. Upon the last consultation, Dr. Curling opined that Plaintiff had reached maximum medical improvement ("MMI") and stated, "I consider the diagnosis of fibromyalgia or diffuse myofascial pain syndrome to be the most appropriate." Dr. Curling assigned a 5% permanent partial disability rating for Plaintiff's back.
11. On March 29, 2004, Plaintiff had a one-time evaluation with Dr. David R. O'Brien, an orthopedist. Dr. O'Brien opined that Plaintiff's neurologic symptoms were not related to her March 5, 2002 injury, and he assigned a 0% permanent partial disability rating.
12. Plaintiff continued to work for Defendant-Employer until August 28, 2004, when she took a leave of absence for reasons unrelated to her injury. Plaintiff returned to her prior position with Defendant-Employer on January 3, 2005 and continued to work earning the same or greater wages. Plaintiff voluntarily resigned her position with Defendant-Employer in August *Page 7 
2005 to take a new position in a jewelry store and was working in this position at the time of hearing.
13. On August 31, 2004, on her own, Plaintiff began treating with Dr. Laura Black, a family practitioner who specializes in the treatment of chronic fatigue syndrome and fibromyalgia. Dr. Black has assessed Plaintiff with post-traumatic fibromyalgia, chronic fatigue syndrome/myalgic encephalitis, sleep disorder, hypothyroidism, TMJ disorder, possible avascular necrosis of the femur heads and reactive depression/anxiety. As of the date of hearing before the Deputy Commissioner, Plaintiff was still treating with Dr. Black.
14. As of the date of the hearing before the Deputy Commissioner, Plaintiff had undergone two courses of physical therapy, one with Concentra in March of 2002 and one with Prybylo-Ess Physical Therapy, at Dr. Curling's recommendation, consisting of 21 visits from November 12, 2002 through February 7, 2003.
15. Plaintiff has also undergone chiropractic treatment, acupuncture and massage therapy at various times since her March 5, 2002 injury.
16. As of the date of the hearing before the Deputy Commissioner, Plaintiff complained of migraine headaches, vision problems, neck pain, pain in her ears, left shoulder pain, left arm pain, pain from the top of her left hip across to her spine at the same level, a weak and dragging left leg and numbness in her left foot and toes.
17. Prior to the incidents on November 15, 2000 and March 5, 2002, Plaintiff was assaulted in 1988 and sustained a TMJ injury. She was in an auto accident in 1991 and suffered a whiplash-type injury and an injury to her left shoulder. In 1995, Plaintiff slipped and fell and injured her low back and left arm/shoulder. *Page 8 
18. The Deputy Commissioner sent letters to Drs. Curling, O'Brien and Black eliciting their opinions in this case. Drs. Curling and Black responded, and Dr. O'Brien did not. No deposition testimony was taken as Plaintiff was not represented by counsel at the time.
19. In an April 10, 2006 letter, Dr. Curling opined that none of Plaintiff's current symptoms were related to the November 15, 2000 incident. However, he opined that the March 5, 2002 incident caused and/or aggravated Plaintiff's complaints of myofascial pain in her neck, back, left shoulder and head and that Plaintiff's current headaches, neck pain, left shoulder pain and low back pain were all caused by the March 5, 2002 incident. Dr. Curling further opined that the medical treatment that Plaintiff had received through the date of his letter had tended to effect a cure, provide relief and/or lessen the period of Plaintiff's disability, except that he was unable to comment on Dr. Black's treatment. While Dr. Curling felt that further treatment was unlikely to effect a cure for Plaintiff's ongoing symptoms, he felt that prescription medications, and occasional massage therapy could help.
20. In her January 26, 2006 response, Dr. Black opined that Plaintiff's fibromyalgia, chronic fatigue syndrome and TMJ dysfunction were all caused, aggravated and/or accelerated by the incidents on November 15, 2000 and March 15, 2002. Dr. Black opined that all of Plaintiff's symptoms as of the date of the hearing were causally related to said incidents. However, in response to questions posed by Defendants, Dr. Black stated that it is not known what causes fibromyalgia, chronic fatigue syndrome and TMJ dysfunction.
21. The Full Commission finds Dr. Curling's opinions in this matter to be the most well-reasoned and persuasive medical opinions.
22. Further, with regard to the parts of the body specifically noted in Defendants' Form 60 filed in I.C. No. 287848, Defendants have not rebutted the presumption, as set out in *Page 9 Perez v. American Airlines, 174 N.C. App. 128, 620 S.E. 2d 288 (2005), that Plaintiff's ongoing symptoms in those body parts are related to the accepted injuries.
23. The following conditions were identified in the Form 60 in I.C. No. 287848 and/or were said to be related to the March 5, 2002 incident by Dr. Curling: upper back, neck, left shoulder, lower back and migraine headaches.
24. The Full Commission finds that further medical treatment for the conditions set out in Paragraph 22 above is reasonably required to effect a cure and/or provide relief for such conditions.
25. As Defendants had sent Plaintiff to multiple doctors who have not provided her with substantial relief from her symptoms related to the March 5, 2002 incident, the Deputy Commissioner found and concluded that Plaintiff should be allowed to choose her own physician(s) for further treatment of these symptoms. Defendants did not appeal from this determination.
26. Since the Opinion and Award of the Deputy Commissioner from which Defendants did not appeal, Defendants have authorized and Plaintiff has received treatment from a number of doctors; she has undergone additional diagnostic testing and physical therapy; she has been provided treatment from a doctor she selected and she is currently scheduled for cervical fusion surgery from the doctor of her choice. Defendants are complying with the decision of the Deputy Commissioner.
27. Plaintiff appealed to the Full Commission solely from the findings of the Deputy Commissioner that her fibromyalgia and chronic pain syndrome were unrelated to her compensable injury. The record was reopened for receipt of additional medical evidence. Plaintiff is now represented by counsel and supplemental briefs have been filed. *Page 10 
28. The medical reports submitted since the reopening of the record provide very little additional information on Plaintiff's claim for compensation for fibromyalgia and/or chronic pain syndrome. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's alleged fibromyalgia and/or chronic pain syndrome are not compensable claims, as Plaintiff has not carried her burden of persuasion that these conditions are causally related to either of her compensable injuries.
 ***********
Based on the foregoing Stipulations and Findings of Fact the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff is not entitled to any further medical treatment in I.C. No. 291426. 2. Plaintiff is entitled to further medical treatment in I.C. No. 287848, to be provided by Defendants, for her pain in her upper back, neck, left shoulder and lower back, and for her migraine headaches. N.C. Gen. Stat. § 97-25.
3. Plaintiff is not entitled to have Defendants pay for medical treatment for her alleged fibromyalgia and/or chronic pain syndrome as Plaintiff has failed to establish that these conditions are causally related to her compensable injury. Holley v. ACTS, Inc., 357 N.C. 228,581 S.E.2d 750 (2003).
4. To the extent that Defendants have not paid for any treatment that Plaintiff has heretofore received from Concentra, Dr. Noah, Dr. Jackson, Dr. Curling, Dr. O'Brien, Dr. Spillman, Dr. Todd Smith or physical therapy that Plaintiff underwent with Concentra or Prybylo-Ess, or for Plaintiff's mileage incurred in traveling for such treatment and therapy, *Page 11 
Plaintiff is entitled to have Defendants pay for such treatment and/or mileage. N.C. Gen. Stat. § 97-25.
5. Other than as specifically set out in Paragraph 4 above, Plaintiff is not entitled to have Defendants pay for any of the other treatment she has heretofore received.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission makes the following:
 AWARD
1. Plaintiff shall choose a physician to provide her with further treatment for her pain in her upper back, neck, left shoulder and lower back, and for her migraine headaches. The chosen physician shall be designated as Plaintiff's treating physician, and Defendants shall authorize and pay for the treatment that such physician recommends for such conditions, including but not limited to diagnostic testing, referrals and prescription medications. As of the date of this Full Commission Opinion and Award it appears that Plaintiff has made such selection and that Defendants are providing such treatment.
2. Defendants shall provide medical treatment to Plaintiff as set out in Paragraph 1 above until further Order of the Commission, subject to the limitations period set out in N.C. Gen. Stat. § 97-25.1.
3. If there are any outstanding balances for treatment that Plaintiff has heretofore received from Concentra, Dr. Noah, Dr. Jackson, Dr. Curling, Dr. O'Brien, Dr. Spillman, Dr. Todd Smith or physical therapy that Plaintiff underwent with Concentra or Prybylo-Ess, or for Plaintiff's mileage incurred in traveling for such treatment and therapy, Defendants shall immediately pay the balances and/or reimburse Plaintiff for her out-of-pocket expenses. With *Page 12 
regard to the mileage, Defendants shall provide Plaintiff with Forms 25T, which she shall properly execute, and, upon Plaintiff's return of said forms to Defendants, they shall provide the appropriate mileage reimbursements pursuant to Rule 407(6).
4. Defendants shall pay the costs. As part of those costs, Defendants shall pay an expert witness fee to Dr. Curling in the amount of $600.00 and to Dr. Black in the amount of $150.00, if not already paid.
This the 30th day of December 2008.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ DANNY L. McDONALD COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1